IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:18-CV-80-D

| | | |
|---|---|---|
| PEARL C. DANIELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CITY OF GREENVILLE, | ) | |
| | ) | |
| Defendant. | ) | |

On April 26, 2018, Pearl Daniels ("Daniels" or "plaintiff"), an African-American female, filed a complaint against the City of Greenville, North Carolina ("City" or "defendant") alleging that the City racially discriminated against her in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981, and discriminated against her based on her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 [D.E. 1]. On July 15, 2018, Daniels amended her complaint [D.E. 10]. On October 28, 2019, the City moved for summary judgment [D.E. 37] and filed a memorandum and statement of material facts in support [D.E. 38, 39]. On October 29, 2019, the court notified Daniels concerning her right to respond to the City's summary judgement motion and the potential consequences for failure to do so [D.E. 40]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam).[1] On December 6, 2019, Daniels responded in opposition [D.E. 43] and filed a statement of facts and an appendix [D.E. 44, 45]. On January 6, 2020, the City replied [D.E. 48]. On January 23, 2020, Daniels responded to the City's reply [D.E. 49]. As explained below, the court grants the City's motion for summary judgment.

---

[1] On August 19, 2019, this court granted Daniels's counsel's motion to withdraw [D.E. 33, 34].

I.

On February 28, 1988, the City hired Daniels as a Community Relations Officer. See Am. Compl. [D.E. 10] ¶¶ 6–7. Daniels currently works in that position for the City, and the City Community Development Director Ben Griffith ("Griffith") is her supervisor. See id. at ¶¶ 7, 9.

On February 27, 2017, Daniels filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that the City discriminated against her based on her race and age. See id. at ¶ 13; [D.E. 10-1]. Daniels is an African-American and was approximately 60 years old when she filed the EEOC charge. See Am. Compl. ¶¶ 2, 6. On January 24, 2018, the EEOC issued Daniels a right to sue letter. See id. at ¶ 14; [D.E. 10-2]. This suit followed. See [D.E. 1].

In her amended complaint, Daniels alleges: (1) she asked the City for "additional support and supplies," including an iPad, but the City denied her requests; (2) she asked the City for "additional employees to serve as support for her job duties," but the City denied her requests; (3) the City denied her "the opportunity to attend any employment[-]related training"; (4) the City reduced the paygrade of Community Relations Officers, which, in turn, decreased Daniels's pay; (5) the City did not allow Daniels to use accrued sick leave; (6) the City did not allow Daniels to receive overtime pay; and (7) the City did not address Daniels's formal complaint filed on June 20, 2016, concerning a dispute with a co-worker Gwendolyn Turnage ("Turnage"). Am. Compl. ¶¶ 10–12.

As for the alleged denial of training, Daniels states that the City denied her requests to attend STAR and Chamber of Commerce leadership training. See Daniels Dep. [D.E. 45-1] 26–28. As for Daniels's use of sick leave, the City does not allow "nonexempt employees" to use "flex time to 'offset' sick hours," or stated differently, "employees are not allowed to swap flex hours and sick hours." Jones Aff. [D.E. 45-12]; see Am. Compl. ¶ 14. As for Daniels's assertions concerning overtime pay, Daniels states that she received "flex time," not overtime pay, for any hours she

2

worked in excess of 40 hours per week. See Daniels Dep. [D.E. 45-1] 26–28; see Am. Compl. ¶ 14. As for the City's investigation of Daniels's complaint concerning Turnage, Daniels asserts that the City "took statements from employees related to Turnage's complaint," but failed to investigate. Am. Compl. ¶ 15. For each assertion, Daniels alleges that the City treated younger, non-African-American employees more favorably. See id. at ¶¶ 10–12, 17.

Daniels alleges: (1) age discrimination in violation of 29 U.S.C. § 601, et seq.; (2) race discrimination in violation of 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981.[2] See id. at ¶¶ 16–28.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See

---

[2] Daniels alleges race discrimination claims under Title VII and 42 U.S.C. § 1981, respectively. See Am. Compl. ¶¶ 21–28. Because the analysis under both statutes is the same, the court analyzes the respective Title VII and section 1981 claims together. See, e.g., Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 545 n.3 (4th Cir. 2003).

3

Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

The ADEA prohibits an employer from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish an ADEA claim in two ways. First, an employee may produce direct evidence showing that an employer's conduct was motivated by age discrimination. See, e.g., Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009); Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019); Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004).[3] Second, an employee may proceed under the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). See Westmoreland, 924 F.3d at 725–26; Mereish, 359 F.3d

---

[3] Daniels argues that the "actions" of "management" are direct evidence of discrimination. [D.E. 43] 2. Daniels does not elaborate, and the record does not contain any direct evidence of age discrimination. Accordingly, the court analyzes Daniels's claims under the McDonnell Douglas framework.

4

at 334; Smith v. Flax, 618 F.2d 1062, 1066–67 (4th Cir. 1980).

The McDonnell Douglas framework includes three steps: "(1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216 (4th Cir. 2016). The McDonnell Douglas framework applies to age discrimination claims under the ADEA. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141–42; (2000); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310–13 (1996); Westmoreland, 924 F.3d at 725; Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006) (en banc).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the adverse employment action was "for a legitimate, nondiscriminatory reason." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). This burden is one of production, not persuasion. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509–11 (1993); Westmoreland, 924 F.3d at 725. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc) (quotation omitted), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013); see, e.g., Reeves, 530 U.S. at 143; Westmoreland, 924 F.3d at 726; King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003). A plaintiff can do so by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence

5

sufficiently probative of [illegal] discrimination." Mereish, 359 F.3d at 336 (quotation omitted); see Reeves, 530 U.S. at 147.

To establish a prima facie case of disparate treatment under the ADEA, a plaintiff must show that (1) she was a member of the protected class, i.e., "individuals who are at least 40 years of age," 29 U.S.C. § 631(a); (2) she was meeting her employer's legitimate expectations at the time of the adverse employment action; (3) the employer took adverse employment action against her; and (4) the employer took that adverse employment action under circumstances giving rise to an inference of age discrimination. See O'Connor, 517 U.S. at 310–13; Hill, 354 F.3d at 285; Howard v. College of the Albemarle, 262 F. Supp. 3d 322, 335 (E.D.N.C. 2017), aff'd, 697 F. App'x. 257 (4th Cir. 2017) (per curiam) (unpublished); Wood v. Town of Warsaw, 914 F. Supp. 2d 735, 739–40 (E.D.N.C. 2012).

The City contends that Daniels has failed to prove her prima facie case because the City never took adverse employment action against Daniels. See [D.E. 38] 11–14. Daniels responds that the City took adverse employment action by "placing the Community Relations Officer position in a lower pay grade" resulting in a decrease in Daniels's pay and benefits, by making Daniels record hours that she worked outside of normal business hours as sick leave and not "flex time," by not allowing Daniels to participate in training programs related to her work, by not investigating Daniels's complaint against her co-worker Turnage, by denying Daniels's requests to hire support staff, by not allowing Daniels to use "flex time" for "sick leave," and by not providing her with requested supplies including, inter alia, an iPad. [D.E. 43] 2–8 (emphasis omitted).[4]

---

[4] In her response, Daniels asserts that two employees in the City Manager's Office sexually assaulted her during the course of the City's investigation into Daniels's complaint. See [D.E. 43] 5–6. This allegation is not in Daniels's complaint. Daniels cannot use summary-judgment briefing to amend her complaint. See Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir.

6

Adverse employment actions "constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998); see, e.g., Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011); Boney v. Trustees of Cape Fear Comm. Coll., 366 F. Supp. 3d 756, 763–64 (E.D.N.C. 2019). The ADEA does not redress trivial harms. See Ellerth, 542 U.S. at 761; Adams v. Arundel Cty. Pub. Sch., 789 F.3d 422, 431 (4th Cir. 2015); Boney, 366 F. Supp. 3d at 763–64.

Even assuming that Daniels's allegations concerning the City's actions are true, the City's alleged trivial actions are not adverse employment action. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 60–69 (2006); Dafau v. Price, 703 F. App'x 164, 166 (4th Cir. 2017) (per curiam) (unpublished); Adams, 789 F.3d at 431; Boney, 366 F. Supp. 3d at 763–65. Moreover, Daniels's testimony defeats her arguments. Daniels admits that the City hired additional employees to assist Daniels. See Daniels Dep. [D.E. 38-1] 6–8. Daniels admits that the City provided her with a computer and a laptop, and that an iPad was not necessary for Daniels to do her assigned job at City meetings. See id. at 3–5, 27. Daniels does not recall any City employee denying her requests to attend training. See id. at 28–29. Daniels admits that the City did not lower her salary. See id. at 35. Daniels admits that she has used her sick leave while employed with the City. See id. at 52–53. Daniels admits that the City investigated her complaint against Turnage. See id. at 53–54. Accordingly, Daniels's testimony confirms that the City's alleged actions are not adverse employment actions. See Ellerth, 524 U.S. at 761; Dafau, 704 F. App'x at 166; Adams, 789 F.3d

---

2009); Cloaninger ex rel. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009); Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *7–10 (E.D.N.C. Sept. 28, 2011) (unpublished). Thus, the court declines to address the allegation.

at 431; Boney, 366 F. Supp. 3d at 763–65. Thus, Daniels has not met the third element of her prima facie case, and her ADEA claim fails.

Alternatively, even viewing the evidence in a light most favorable to Daniels, Daniels provides no evidence for her claim that the City discriminated against her based on her age. See, e.g., O'Connor, 517 U.S. 311–13. Daniels admits that she did not know the age of any employee who she claimed the City treated more favorably. See Daniels Dep. [D.E. 38-1] 12–13, 20–22, 30–31, 33, 43–45. Moreover, Daniels's statements concerning the age of City employees are speculative. See id.; Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)); Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); JKC Holding Co. LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Thus, the court grants summary judgment to the City concerning Daniels's ADEA claim.

B.

Title VII prohibits an employer from taking adverse employment action against an employee "because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a Title VII or section 1981 violation in two ways. First, a plaintiff can show through direct evidence that racial discrimination motivated an employer's adverse employment action. See, e.g., Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). If a plaintiff lacks direct evidence (as in this case), a plaintiff can alternatively proceed under the McDonnell Douglas burden-shifting framework. See Hill, 354 F.3d at 284–85.

To establish a prima facie case under the Title VII and section 1981, a plaintiff must show: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations

8

for employment at the time of the adverse employment action; (3) she suffered adverse employment action; and (4) different treatment from similarly situated employees outside of her protected class. See Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007); King, 328 F.3d at 149; Dugan v. Albermarle Cty. Sch. Bd., 293 F.3d 716, 720–21 (4th Cir. 2002).

Daniels makes the same arguments concerning race discrimination under Title VII and section 1981 that she made concerning age discrimination under the ADEA. The arguments fare no better. As discussed, even viewing the evidence in the light most favorable to Daniels, the City did not take adverse employment action against her. See Adams, 789 F.3d at 431; James v. Booz-Allen Hamilton, Inc., 368 F.3d 371, 376–77 (4th Cir. 2004); Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 442–44 (E.D.N.C. 2012). Alternatively, even viewing the evidence in a light most favorable to Daniels, no rational jury could find that the City discriminated against her based on her race. See Anderson, 477 U.S. at 249; Holley, 846 F. Supp. 2d at 432–41. Accordingly, the court grants summary judgement to the City concerning Daniels's Title VII and section 1981 claims.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 37]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 8 day of April 2020.

JAMES C. DEVER III
United States District Judge

9